IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE LUIS SANTIAGO,            :
    Plaintiff,             :
                           :
v.                             :            CIVIL ACTION NO. 25-CV-6816
                           :
CITY OF PHILADELPHIA, *et al.*, :
    Defendants.            :

**MEMORANDUM**

**MCHUGH, J.**                                            **FEBRUARY 11, 2026**

*Pro se* Plaintiff Jose Luise Santiago brings this civil action, asserting claims pursuant to

42 U.S.C. § 1983, 42 U.S.C. § 1985, and state tort law against the City of Philadelphia, The

Estate of the Honorable Paul Ribner, and David Disiderio.  He also seeks leave to proceed *in*

*forma pauperis*.  For the following reasons, the Court will grant Santiago leave to proceed *in*

*forma pauperis* and dismiss the Complaint.

## I.    FACTUAL ALLEGATIONS[1]

In September 1992, Mr. Santiago was charged with first-degree murder and other crimes

by the Philadelphia District Attorney's Office ("DAO"), arising from an August 1992 drive-by

shooting in which he was the alleged driver.  (Compl. ¶ 22); *see Commonwealth v. Santiago*, CP-

51-CR-0923471-1992 (C.P. Philadelphia).  The victim was an innocent bystander who was killed

by a stray bullet.  (Compl. ¶ 2.)  Defendant Assistant District Attorney David Disiderio

---

[1] The facts set forth in this Memorandum are taken from Santiago's Complaint (ECF
No. 2).  The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing
system.  Additionally, the Court includes facts reflected in publicly available state court records,
of which this Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d
256, 260 (3d Cir. 2006).

prosecuted the case for the Commonwealth.  (Compl. ¶ 21.)  At a pretrial conference on September 20, 1993, Disiderio announced that his office would be pursuing the death penalty on the first-degree murder charge, but that if Mr. Santiago waived his right to a jury trial in favor of a bench trial, the DAO would agree not to pursue the death penalty.  (*Id*. ¶¶ 33-34.)

Mr. Santiago chose a bench trial and was ultimately found guilty of first-degree murder by Judge Paul Ribner.  (*Id*. ¶¶ 7-10.)  Santiago asserts that the trial was flawed in several ways. He alleges that Desiderio failed to present any evidence that Santiago intended to kill the bystander victim, as required for a first-degree murder charge, but that Ribner nevertheless found Santiago guilty.  (Compl. ¶ 10.)  When Santiago appealed his conviction on that grounds, Desiderio raised the theory of transferred intent for the first time, and Ribner echoed that theory in his post-trial Pa. R. A. P. 1925(a) opinion.  (*Id*.)  Santiago contends that if he had known he could be convicted on a transferred intent theory he would have chosen a trial by jury.  (*Id*. ¶¶ 32, 37-38.)  Santiago also asserts that Judge Ribner improperly credited the eyewitness testimony of "a set of impeached criminal witnesses—drug users and sellers with prior convictions and inconsistent statements," and improperly allowed testimony regarding Santiago's prior drug dealing and convictions.  (*Id*. ¶¶ 9, 25, 39-43.)

While pursuing post-conviction relief years later, Mr. Santiago learned that Ribner had a potential conflict of interest that he had failed to disclose: Disiderio was an eyewitness in a personal injury lawsuit in which Judge Ribner and his wife were plaintiffs, arising from a car accident months before Santiago's trial.  (*Id*. ¶¶ 4, 26-29, 51.)  Ribner had disclosed the potential conflict in several other cases, including another capital murder case tried roughly one month before Santiago's, but failed to do so in Santiago's case.  (*Id*. ¶ 5.)  Santiago contends that if he had known of the Judge's conflict he would have sought the Judge's recusal or chosen a jury

trial.  (*Id*. ¶ 32.)  Based on the newly-discovered information, Santiago filed a Post Conviction

Relief Act ("PCRA") petition, which was ultimately granted.  (*Id*. ¶¶ 52-54.)  The Court vacated

Santiago's first-degree murder conviction and ordered a new trial.  (*Id*. ¶ 54.)  Rather than go to

trial, the DAO offered Santiago the option to plead guilty to third-degree murder and be

sentenced to time served.  (*Id*. ¶ 55.)  Despite maintaining his innocence, Santiago accepted the

plea on March 1, 2024 and was released in October 2024.  (Compl. ¶ 56.)  *See also Santiago*,

CP-51-CR-0923471-1992.

Mr. Santiago contends that the City is liable for the constitutional injuries he suffered

because they created a "culture in which constitutional violations were tolerated, where

prosecutors were not meaningfully disciplined for Brady[2] violations or conflicts of interest, and

where the City failed to implement structural reforms."  (Compl. ¶ 58.)  He asserts that the City

maintained various customs that caused the violation of his rights, including:

> (a) a pattern and practice of failing to disclose exculpatory and impeachment evidence in violation of Brady v. Maryland;
>
> (b) A culture that rewarded high conviction rates and tolerated the use of unreliable witnesses, coerced testimony, and after-the-fact rationalization of legal theories;
>
> (c) Failure to train and supervise prosecutors regarding conflicts of interest, including situations where a prosecutor is a witness to a judge's personal litigation;
>
> (d) Failure to implement effective supervisory systems to detect and prevent structural due-process violations, particularly in capital and homicide prosecutions; and
>
> (e) Failure to discipline, retrain, or meaningfully sanction prosecutors like Desiderio after judicial findings exonerations, or civil litigation exposed patterns of misconduct.

---

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963).

3

(Compl. ¶ 64.)  In apparent support of his failure to train/supervise claim, he asserts that Desiderio "has been named in multiple civil rights lawsuits alleging Brady violations, use of lying informants, fabrication of evidence, and wrongful convictions" and that some of these cases have resulted in civil settlements and convictions being overturned.  (Compl. ¶ 57.)

Based on these allegations, Santiago asserts claims under § 1983, § 1985,[3] and state law for: (a) deprivation of liberty without due process and denial of a fair trial; (b) malicious prosecution and wrongful conviction; (c) "extraordinary judicial and prosecutorial misconduct, including unlawful manipulation of his jury trial rights"; (d) conspiracy; (e) municipal and supervisory liability; and (f) state law claims for intentional infliction of emotional distress and false imprisonment.  (*Id.* ¶ 13.)  He seeks millions in damages, retrospective declaratory relief,[4] "injunctive and policy-reform relief" via changes to City of Philadelphia policies, and attorney's fees.  (*Id.* at 26-27.)

---

[3] Other than the passing reference to 42 U.S.C. § 1985, Santiago fails to allege any facts to support a civil rights conspiracy claim actionable under § 1985.  That claim is, therefore, not plausible.  *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other" (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

[4] Declaratory relief is unavailable to adjudicate past conduct, so Santiago's request for this declaratory relief is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

## II.    STANDARD OF REVIEW

The Court will grant Mr. Santiago leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Santiago's Complaint if it fails to state a claim. The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is, whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the Plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *See Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Mr. Santiago is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented

5

litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

The Court must also review the pleadings and dismiss the matter if it determines that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## III.    DISCUSSION

### A.    Federal Claims

Santiago asserts constitutional claims against the Defendants pursuant to 42 U.S.C. § 1983, the vehicle by which such claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

### 1.    Claims Against the Estate of Judge Ribner

Santiago's claims against the Estate of Judge Ribner are not plausible. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in

their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

Santiago contends that Ribner's (and Desiderio's) actions and omissions are not entitled to immunity because they were "administrative, investigative, or non-judicial acts not entitled to absolute immunity" (Compl. ¶ 112.). Beyond this conclusory statement, Santiago does not allege any facts to indicate that Ribner's actions were not "judicial acts" or that he acted in the absence of all jurisdiction. Rather, each of the alleged acts and omissions giving rise to Santiago's claims occurred in the course of Ribner's presiding over Santiago's criminal case, namely: (1) failing to disclose a potential conflict of interest; (2) unfairly discrediting Santiago's witnesses; (3) improperly allowing testimony adverse to Santiago; and (4) providing a post-hoc rationale for Santiago's conviction on appeal. (*See generally* Compl.) While Santiago contends that Ribner's actions and omissions amount to legal and ethical violations, even when a judge commits "grave procedural errors," *see Stump*, 435 U.S. at 359, or takes actions that are alleged

7

to be legally incorrect, in bad faith, malicious or corrupt, so long as they were taken in his judicial capacity they remain protected by absolute immunity. *Mireles*, 502 U.S. at 11-12. Because each of the acts giving rise to Santiago's claims were taken in Ribner's judicial capacity in an action over which he clearly could exercise jurisdiction as a judge of the Court of Common Pleas, they are entitled to absolute immunity. Accordingly, Santiago's § 1983 claims against Ribner are dismissed with prejudice.

### 2.    Claims Against ADA Desiderio

Santiago's claims against Defendant Desiderio are also not plausible. Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020); s*ee also id.* at 164 (prosecutors were entitled to immunity from claims based on allegations "that at hearings and at trial the Prosecutors withheld material exculpatory evidence from defense counsel, the court, and the jury; filed a criminal complaint without probable cause; and committed perjury before and during trial").

While prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process," a prosecutor does not have absolute immunity when performing administrative functions or the traditionally investigative functions of law enforcement. *Buckley v. Fitzsimmons*, 509 U.S. 259, 274-75

8

(1993) (holding that prosecutor's evaluation and alleged fabrication of forensic evidence, prior to developing probable cause to arrest, "was entirely investigative in character" and therefore only protected by qualified immunity); *Burns v. Reed*, 500 U.S. 478, 493 (1991) (holding that advising the police in the investigative phase of a criminal case was an investigative function that did not entitle a prosecutor to absolute immunity); *Odd v. Malone*, 538 F.3d 202, 211 (3d Cir. 2008) (holding that a prosecutor's failure to notify a judge of a continuance in a related case was an administrative act not entitled to absolute immunity) (citation omitted); *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999) (noting that "a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity") (citations omitted).

Mr. Santiago's constitutional claims against Desiderio appear to be based on three principal allegations: (1) he failed to disclose his involvement as a witness in Judge Ribner's ongoing civil lawsuit; (2) he "manipulated" Santiago into waiving his right to a jury trial by threatening to pursue the death penalty; and (3) he failed to advise Santiago that he could be convicted on a transferred intent theory of liability. (*See generally* Compl.) All three of these allegations arise from Desiderio's role as an advocate for the Commonwealth during the judicial phase of Santiago's prosecution, and his actions are thus protected by absolute immunity. *See Yarris v. County of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006) ("Ultimately, whether a prosecutor is entitled to absolute immunity depends on whether . . . she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation"); *see also Fogle*, 957 F.3d at 164; *Imbler*, 424 U.S. at 431. Beyond his conclusory statement that Desiderio's challenged conduct consisted of "administrative, investigative, or non-judicial acts not entitled to absolute immunity" (Compl. ¶ 112.), there is no allegation that the

9

conduct arose from the investigative phase of the case, or that Desiderio was performing an administrative function separate from his advocacy role. *Cf. Odd*, 538 F.3d at 211; *Giuffre v. Bissell*, 31 F.3d 1241, 1253 (3d Cir. 1994) (holding that a prosecutor facilitating the sale of plaintiff's property pursuant to an immunity agreement was a strictly administrative function not entitled to absolute immunity); *Schrob v. Catterson*, 948 F.2d 1402 (3d Cir. 1991) (holding that prosecutor's "management of and negotiations concerning return of . . . [seized] property [was] not directly related to the judicial process" and therefore not entitled to judicial immunity). And while Santiago asserts that Desiderio engaged in "extraordinary . . . prosecutorial misconduct" (Compl. ¶ 13), he does not allege any acts or omissions so egregious that they "fall wholly outside the prosecutorial role no matter when or where they are committed." *Cf. Odd*, 538 F.3d at 211 (noting that, for example, a prosecutor is never entitled to absolute immunity for deliberately destroying exculpatory evidence) (citing *Yarris*, 465 F.3d at 136-37). Accordingly, Santiago's claims against Desiderio are barred by absolute immunity and will be dismissed with prejudice.

### 3.    City of Philadelphia

Finally, Mr. Santiago asserts several claims against the City of Philadelphia under § 1983, alleging that his constitutional injuries were caused by City policies and customs, including a failure to train and supervise.[5] To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or

---

[5] Santiago does not specify whom the City failed to train or supervise, however the Court infers that his claim is based on the underlying actions of Judge Ribner and ADA Desiderio since no other individual is mentioned in the Complaint.

policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Liability based on a custom rather than a formal adopted policy proceeds on the theory that the relevant practice is so widespread as to have the force of law. *Board of County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a *Monell* claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases). "Where . . . the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter*, 181 F.3d at 357 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

To the extent Mr. Santiago alleges the City is vicariously liable for Desiderio's alleged misconduct in prosecuting his case, those claims fail because Desiderio was not an employee of the City. *See Bey v. Amoroso*, No. 24-1786, 2024 WL 3071065, at *5 (E.D. Pa. June 20, 2024) ("even construing the Complaint liberally, none of the individual Defendants appears to be an employee of the City since assistant district attorneys are employees of the Philadelphia District Attorney's Office"); *Holland v. City of York*, No. 24-1501, 2025 WL 1109025, at *4 (M.D. Pa.

11

Mar. 14, 2025) ("neither Magisterial District Judges nor the District Attorney or the District Attorney's Office are employees of the City of York"), *report and recommendation adopted*, 2025 WL 1106075 (M.D. Pa. Apr. 14, 2025).  Rather, he was acting on behalf of the Commonwealth of Pennsylvania rather than the City in his function as a prosecutor.  *See Laughman v. Pennsylvania*, No. 05-1033, 2006 WL 709222, at *6 (M.D. Pa. Mar. 17, 2006) ("When a District Attorney is making prosecutorial decisions, he is serving in the role of a state actor and the county where his office is located is not liable for his prosecutorial decisions,"); *see also, e.g., Tavenner v. Shaffer*, No. 08-1089, 2008 WL 4861982, at *3 (M.D. Pa. Nov. 6, 2008) (holding that where an ADA is acting in a "completely prosecutorial" capacity in prosecuting the plaintiff, his alleged misconduct cannot "represent the policy of York County such that the county can be held vicariously liable under § 1983"); *Barnes v. City of York*, No. 10-1684, 2011 WL 1398399, at *5 (M.D. Pa. Mar. 24, 2011) ("Examining the particular job functions of a district attorney, a district attorney's actions in prosecuting a criminal case are a function of the state for purposes of municipal liability."), *report and recommendation adopted*, No. 10-1684, 2011 WL 1396834 (M.D. Pa. Apr. 13, 2011).  Judge Ribner was also not an employee of the City since, as a member of the Common Pleas Court, he was an employee of the Commonwealth. *See*, *e.g.*, *Quisenberry v. Ridge*, No. 20-1824, 2021 WL 4340549, at *2 (W.D. Pa. Sept. 23, 2021) ("Quisenberry's *Monell* claim against the County is tied to the conduct of Mr. Ridge and Judge Emery—who are, again, Commonwealth employees"); *Watson v. Kameen*, No. 15-1060, 2015 WL 7068133, at *6 (M.D. Pa. Oct. 15, 2015) (dismissing *Monell* claim against the county arising from judge's actions in underlying custody proceedings). *report and recommendation adopted*, 2015 WL 7016503 (M.D. Pa. Nov. 12, 2015).  For the same reasons, Santiago's custom-based claims, alleging that the City had a "pattern or practice of failing to disclose

exculpatory and impeachment evidence in violation of Brady v. Maryland," and "[a] culture that rewarded high conviction rates and tolerated the use of unreliable witnesses, coerced testimony, and after-the-fact rationalizations of legal theories," (Compl. ¶ 64), are not plausible because they are based on the DAO exercising its prosecutorial functions on behalf of the Commonwealth.[6]  Santiago's failure to supervise claims against the City are likewise not plausible because he does not allege any underlying misconduct by a City employee.

In any event, Mr. Santiago does not allege any facts suggesting that at the time of his trial some policymaker was "on actual or constructive notice" of any deficiency in Desiderio's training or supervision that was causing the violation of citizens' constitutional rights, as required to allege the deliberate indifference required for a plausible claim.  *See Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Washington v. City of Philadelphia*, No. 11-3275, 2012 WL 85480, at *8 (E.D. Pa. Jan. 11, 2012) ("Plaintiff's failure to train claim also must fail because he alleges no facts to show deliberate indifference.  He does not plead any fact to suggest a 'pattern of similar constitutional violations by untrained employees.'  Plaintiff merely refers to 'other' aggrieved parties in the most abstract, conclusory terms.").  Santiago alleges vaguely that "[f]ormer ADA Desiderio has been named in multiple civil rights lawsuits alleging Brady violations, use of lying informants, fabrication of evidence, and wrongful convictions." (Compl. ¶ 57.)  He does not, however, allege any facts to suggest these lawsuits or any other incident placed officials on notice of the need for further training or supervision of Judge Ribner

---

[6] Moreover, other than asserting the existence of these alleged customs, Santiago does not allege any facts describing these customs or indicating that they were "so widespread as to have the force of law." *Board of County Comm'rs,* 520 U.S. at 404; *see also Lang v. Schouppe*, No. 24-1194, 2025 WL 1747077, at *5 (W.D. Pa. May 19, 2025) (dismissing *Monell* claims where plaintiff "does not allege facts to establish a custom so widespread 'as to have the force of law.' In fact, he provides no factual basis for or describing these supposed customs or practices at all."), *report and recommendation adopted*, 2025 WL 1746670 (W.D. Pa. June 24, 2025).

or ADA Desiderio prior to Santiago's trial concerning disclosing conflicts of interest, waiving jury trial rights, the rules of evidence, or the need to advise a defendant of the use of a transferred intent theory of liability.

### B.    State Law Claims

Because the Court has dismissed Santiago's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Mr. Santiago does not allege the citizenship of the parties, however he provides a Philadelphia residential address for himself and asserts that "all Defendants reside in, or are deemed to reside in, [the Eastern District of Pennsylvania.]"  (Compl. ¶¶ 17-18.)  He thus appears to allege that he and all of the Defendants are Pennsylvania citizens.  Accordingly, Santiago has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Santiago leave to proceed *in forma pauperis* and dismiss the Complaint.  His federal claims will be dismissed with prejudice because amendment would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile").  His state law claims will be dismissed without prejudice, so Mr. Santiago can file these claims in the appropriate court if he chooses to do so.  The Court expresses no opinion on the merits of any such lawsuit.  An Order follows, which dismisses this case.

**BY THE COURT:**

**/s/ Gerald Austin McHugh**
**GERALD A. MCHUGH, J.**

15